**United States District Court**

For the Northern District of California

1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                 FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| TODD LEWIS ASHKER and DANNY TROXELL, | No. C 04-1967 CW |
| Plaintiffs, | ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS AND |
| v. | GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| ARNOLD SCHWARZENEGGER; R.Q. HICKMAN; EDWARD ALAMEIDA, JR; JEANNE WOODFORD; JOE MCGRATH; CAROL A. DALY; SHARON LAWIN; CAL TERHUNE; GEORGE LEHMAN; MR. ROOS; BOOKER T. WELCH; BRETT GRANLUND; LARRY STARN; KENNETH L. RISEN; JONES M. MOORE; GRAY DAVIS; PETE WILSON; JAMES GOMEZ; and DOES 1 through 10; | |
| Defendants. | |

_____/

20

21        All Defendants move, pursuant to Federal Rule of Federal

22   Procedure 12(b), to dismiss the complaint filed by Plaintiffs

23   Todd Lewis Ashker and Danny Troxell, for failure to exhaust

24   administrative remedies.  Defendants Daly, Lawin, Lehman, Roos,

25   Welch, Granlund, Starn, Risen and Moore are all commissioners of

26   the Board of Prison Terms (BPT).  These Defendants (BPT

27   Defendants) also move, pursuant to Federal Rule of Civil

28   Procedure 56, for summary judgment of absolute and qualified

**United States District Court**
For the Northern District of California

1   immunity.  Plaintiffs oppose the motions.[1]  The matter was taken

2   under submission on the papers.  Having considered the parties'

3   papers and the evidence cited therein, the Court GRANTS in part

4   Defendants' motion to dismiss for failure to exhaust

5   administrative remedies and GRANTS the BPT Defendants' motion

6   for summary judgment of absolute and qualified immunity from

7   Plaintiffs' damages claims.

8                                BACKGROUND

9      Plaintiffs are both inmates in the Secure Housing Unit

10  (SHU) at Pelican Bay State Prison.  Ashker was sentenced to a

11  six year prison term for burglary in 1984.  In 1990, he was

12  convicted of the second degree murder of another inmate at

13  Pelican Bay, and was sentenced to a prison term of twenty-one

14  years to life.  Ashker has been housed in the SHU at Pelican Bay

15  since 1990.  Troxell is serving a prison term of twenty-six

16  years to life pursuant to a 1979 plea of guilty to first degree

17  murder.  Troxell has been housed at the Pelican Bay SHU since

18  1989.

19     Both Plaintiffs are validated members of the Aryan

20  Brotherhood prison gang; they were each re-validated as gang

21  members on July 8, 2003.  Due to their respective gang

22  associations, they are housed in the SHU on "indeterminate"

23  status.  According to California Department of Corrections (CDC)

24  policy, Plaintiffs cannot be released from the SHU unless they

25  are paroled, they debrief, or they are inactive in gang activity

26  _____

27      [1] Plaintiffs' motion for leave to file a brief in excess of
    twenty-five pages (Docket No. 24) is GRANTED.

28                                      2

United States District Court

For the Northern District of California

1  for a period of six years.  Troxell is currently working on

2  earning a general education diploma (GED).  Ashker has already

3  earned his GED and is now attempting to complete classes for a

4  paralegal certificate.

5       Troxell's most recent parole hearing was held on July 10,

6  2001.  The BPT denied Troxell parole, ruling that he posed an

7  unreasonable risk of danger to the public.  In its decision, the

8  BPT considered, inter alia, the especially callous nature of the

9  commitment offense, Troxell's previous history of criminality,

10 his failure to upgrade educationally and vocationally, his

11 failure to develop sufficient post-parole plans, and his prison

12 disciplinary record.  Ashker's most recent parole hearing, which

13 he did not attend, was held on August 7, 2003.  The BPT also

14 found that Ashker posed an unreasonable risk of danger to the

15 public, noting the nature of his murder of a fellow inmate, his

16 history of criminality and his prison disciplinary record.

17      Ashker submits evidence that, in both 1992 and 1999, he

18 filed administrative challenges to his gang validation and, in

19 2001, he challenged a finding that he was not an inactive gang

20 member.  Ashker also offers evidence that he appealed, in

21 October, 2003, the BPT's decision in August of that year to deny

22 him parole.  On October 5, 2003, Ashker submitted an

23 administrative appeal challenging the CDC policy of keeping him

24 in the SHU on indeterminate status as a result of his gang

25 validation.  That appeal was denied at the first level on

26 November 6, 2003.  On November 16, 2003, Ashker registered his

27 "dissatisfaction" with the first level decision, stating that

28

3

United States District Court

For the Northern District of California

1  his appeal should have been sent directly to the warden (i.e.

2  second level review) because it addressed a prison policy.  On

3  November 25, Ashker's appeal was returned to him because he had

4  failed to argue why the first level review determination was

5  erroneous.  On December 9, 2003, Ashker sent the form back to

6  the appeals coordinator, stating again that his appeal should

7  have been reviewed initially at the second level.  On January

8  14, 2004, Ashker's complaint was again sent back to him because

9  he had not filled out the necessary sections.  No further action

10  was taken on that appeal.  Defendants acknowledge that, on May

11  3, 2004, Ashker exhausted a different appeal relating to the

12  prison's policy prohibiting hard cover books in the SHU.

13       On October 4, 2003, Troxell filed an administrative appeal

14  challenging the CDC policy of keeping him in the SHU on

15  indeterminate status as a result of his gang validation.  That

16  appeal was denied, and Troxell appealed the denial.  However, as

17  in Ashker's case, the appeal was never processed through the

18  second or third levels of review because Troxell did not comply

19  with administrative filing procedures.  In February, 2004,

20  Troxell filed an administrative appeal asking for review of his

21  gang status, which was rejected by the appeals coordinator as

22  untimely.  Troxell also filed several administrative appeals

23  that Plaintiffs acknowledge were not exhausted when this

24  complaint was filed.

25       Plaintiffs filed this complaint on May 19, 2004, against

26  Governors Arnold Schwarzenegger, Gray Davis and Pete Wilson, the

27  BPT Defendants, Roderick Hickman (Secretary of the California

28                                    4

Youth Authority), Jeanne Woodford (Director of CDC), James Gomez, Cal Terhune and Edward Alameida (former CDC Directors), and Joe McGrath (Warden of Pelican Bay).  The complaint alleges the following causes of action: (1) violation of First Amendment freedom to associate with members of the Aryan Brotherhood, (2) violation of First Amendment freedom of speech for not allowing hard cover books, (3) violation of Fifth Amendment freedom against self-incrimination for CDC's debriefing requirement, (4) violation of Eighth Amendment prohibition of cruel and unusual punishment, also arising from the debriefing requirement, (5) violation of the due process and equal protection clauses of the Fourteenth Amendment and of the ex post facto clause for retention in SHU on indeterminate status based upon gang association, (6) violation of the equal protection clause of the Fourteenth Amendment based upon alleged discrimination against white inmates, and (7) supplemental State law claims. Plaintiffs' complaint specifically states that they are not challenging the BPT's discretionary functions but, rather, policies that keep non-debriefing inmates in the SHU on indeterminate status and that prevent inmates in SHU from being paroled.  The complaint seeks declaratory and injunctive relief as well as damages.  The Court issued a screening order on October 19, 2004 and set a briefing schedule for case dispositive motions.

                         LEGAL STANDARD

I.   Motion to Dismiss

     Title 42 U.S.C. section 1997e provides, "No action shall be

5

United States District Court

For the Northern District of California

1   brought with respect to prison conditions under [42 U.S.C.

2   § 1983], or any other Federal law, by a prisoner confined in any

3   jail, prison, or other correctional facility until such

4   administrative remedies as are available are exhausted."   42

5   U.S.C. § 1997e(a).   Under this section, an action must be

6   dismissed unless the prisoner exhausted his available

7   administrative remedies before he filed suit.   See McKinney v.

8   Carey, 311 F.3d 1198, 1199 (9th Cir. 2002).   It is not

9   sufficient if the inmate exhausts his available remedies during

10  the course of litigation.   Id.   The exhaustion requirement

11  "applies to all inmate suits about prison life, whether they

12  involve general circumstances or particular episodes, and

13  whether they allege excessive force or some other wrong."

14  Porter v. Nussle, 534 U.S. 516, 532 (2002).

15       Although the exhaustion requirement is mandatory, see Booth

16  v. Churner, 532 U.S. 731, 739 (2001), it is not jurisdictional,

17  Wyatt v. Terhune, 315 F.3d 1108, 1117 n.9 (9th Cir.), cert.

18  denied, Alameida v. Wyatt, 124 S. Ct. 50 (2003).   Therefore,

19  district courts have some discretion in determining compliance

20  with the statute.   See Wyatt v. Leonard, 193 F.3d 876, 879 (6th

21  Cir. 1999).

22       Under section 1997e(a), non-exhaustion is an affirmative

23  defense -- defendants have the burden of raising and proving the

24  absence of exhaustion.   Wyatt, 315 F.3d at 1119.   The defense of

25  non-exhaustion is properly raised in an unenumerated Rule 12(b)

26  motion, and when deciding the motion the court may look beyond

27  the pleadings and decide disputed issues of fact.   Id. at 1119-

28

United States District Court

For the Northern District of California

1  20.  The court's role is to determine whether the evidence is

2  adequate to establish non-exhaustion.  See id. at 1120.

3  II.  Motion for Summary Judgment

4       Summary judgment is properly granted when no genuine and

5  disputed issues of material fact remain, and when, viewing the

6  evidence most favorably to the non-moving party, the movant is

7  clearly entitled to prevail as a matter of law.  Fed. R. Civ. P.

8  56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986);

9  Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th

10 Cir. 1987).

11      The moving party bears the burden of showing that there is

12 no material factual dispute.  Therefore, the court must regard

13 as true the opposing party's evidence, if supported by

14 affidavits or other evidentiary material.  Celotex, 477 U.S. at

15 324; Eisenberg, 815 F.2d at 1289.  The court must draw all

16 reasonable inferences in favor of the party against whom summary

17 judgment is sought.  Matsushita Elec. Indus. Co. v. Zenith Radio

18 Corp., 475 U.S. 574, 587 (1986); Intel Corp. v. Hartford

19 Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).

20      Material facts which would preclude entry of summary

21 judgment are those which, under applicable substantive law, may

22 affect the outcome of the case.  The substantive law will

23 identify which facts are material.  Anderson v. Liberty Lobby,

24 Inc., 477 U.S. 242, 248 (1986).

25      Where the moving party does not bear the burden of proof on

26 an issue at trial, the moving party may discharge its burden of

27 showing that no genuine issue of material fact remains by

28                                    7

1   demonstrating that "there is an absence of evidence to support

2   the nonmoving party's case." Celotex, 477 U.S. at 325.  The

3   moving party is not required to produce evidence showing the

4   absence of a material fact on such issues, nor must the moving

5   party support its motion with evidence negating the non-moving

6   party's claim.  Id.; see also Lujan v. Nat'l Wildlife Fed'n, 497

7   U.S. 871, 885 (1990); Bhan v. NME Hosps., Inc., 929 F.2d 1404,

8   1409 (9th Cir. 1991), cert. denied, 502 U.S. 994 (1991).  If the

9   moving party shows an absence of evidence to support the non-

10  moving party's case, the burden then shifts to the opposing

11  party to produce "specific evidence, through affidavits or

12  admissible discovery material, to show that the dispute exists."

13  Bhan, 929 F.2d at 1409.  A complete failure of proof concerning

14  an essential element of the non-moving party's case necessarily

15  renders all other facts immaterial.  Celotex, 477 U.S. at 323.

16                              DISCUSSION

17  I.   Motion to Dismiss

18       Defendants argue that Plaintiffs did not exhaust all of the

19  available administrative remedies prior to bringing their

20  claims.  The State of California provides its inmates and

21  parolees the right to appeal administratively "any departmental

22  decision, action, condition or policy perceived by those

23  individuals as adversely affecting their welfare."  Cal. Code

24  Regs. tit. 15, § 3084.1(a).  In order to exhaust available

25  administrative remedies within this system, a prisoner must

26  proceed through several levels of appeal: (1) informal

27  resolution, (2) formal written appeal on a CDC 602 inmate appeal

28                                    8

**United States District Court**
For the Northern District of California

form, (3) second level appeal to the institution head or

designee, and (4) third level appeal to the Director of the

California Department of Corrections.  Id. § 3084.5; Barry v.

Ratelle, 985 F. Supp. 1235, 1237 (S.D. Cal. 1997).

Plaintiffs have submitted no evidence that they brought

even the initial inmate appeals for the first (freedom to

associate with members of Aryan Brotherhood), third (freedom

from self-incrimination arising from debriefing requirement),

fourth (debriefing requirement as cruel and unusual punishment)

or sixth (white inmates treated differently in violation of the

equal protection clause) causes of action in their complaint.

Plaintiffs also acknowledge that Troxell did not bring an

initial inmate appeal for violation of his First Amendment

freedom of speech arising from the SHU's prohibition on hard

cover books, which is Plaintiffs' second cause of action.

Plaintiffs do submit evidence that both Troxell and Ashker,

on October 4 and 5, 2003, respectively, filed initial inmate

appeals that they were being held in the SHU on indeterminate

status, which they alleged effectively changed their sentences

to life without parole.  Thus, Plaintiffs did initiate the

administrative review procedure for their fifth cause of action.

However, the evidence is clear that neither Ashker nor Troxell

exhausted the available administrative processes for their

appeals on this issue; neither inmate appeal was ever processed

through the second stage of review because Ashker and Troxell

failed to adhere to the prison's administrative filing

procedures.

9

United States District Court

For the Northern District of California

1    The evidence shows that the only cause of action in the

2 complaint for which the administrative procedures have been

3 exhausted is Ashker's second cause of action for violation of

4 his First Amendment freedom of speech, arising from the SHU's

5 policy prohibiting hard cover books.  Plaintiffs have submitted

6 evidence that both Ashker and Troxell exhausted available

7 administrative remedies for inmate appeals seeking to overturn

8 their gang validations.  However, Plaintiffs acknowledge that

9 their complaint does not challenge their classifications as gang

10 members.

11    Defendants urge the Court to follow the Eight Circuit's

12 rule, announced in <u>Graves v. Norris</u>, 218 F.3d 884 (8th Cir.

13 2000), that the entire lawsuit must be dismissed without

14 prejudice if an incarcerated plaintiff fails to exhaust the

15 administrative remedies for all of his claims.  The Second

16 Circuit, in <u>Ortiz v. McBride</u>, 380 F.3d 649 (2nd Cir. 2004),

17 ruled that total exhaustion was not required, and that the

18 plaintiff in that case could proceed with his exhausted claims.

19 District courts in this Circuit are split on the issue.  <u>See</u>

20 <u>Snow v. Terhune</u>, 2002 WL 257841 (N.D. Cal. Feb. 14, 2002)

21 (following <u>Graves</u>); <u>Blackmon v. Crawford</u>, 305 F. Supp. 2d 1174

22 (D. Nev. 2004) (ruling that total exhaustion not required).

23 Here, the Court declines to follow the Eighth Circuit's total

24 exhaustion rule.  Thus, Defendants' motion to dismiss Ashker's

25 second cause of action, for which he exhausted the available

26 administrative remedies, is denied.  Defendants' motion to

27 dismiss the remaining causes of action in Plaintiffs' complaint

28                                  10

1  is granted because Plaintiffs failed to exhaust the

2  administrative remedies for those claims.

3  II.  Motion for Summary Judgment

4      The BPT Defendants also move for summary judgment of

5  absolute immunity from the claims in Plaintiffs' complaint.  In

6  addition, the BPT Defendants argue that they are entitled to

7  summary judgment of qualified immunity from Plaintiff's damages

8  claims.

9      A.   Absolute Immunity

10     The BPT Defendants rely upon Swift v. California, 384 F.3d

11  1184, 1189 (9th Cir. 2004), which held that "parole board

12  members are entitled to absolute immunity when they perform

13  'quasi-judicial' functions" such as making decisions whether to

14  grant, revoke or deny parole.  The BPT Defendants also cite

15  Sellars v. Procunier, 641 F.2d 1295, 1303 (9th Cir. 1981), which

16  similarly held that parole board officials perform functionally

17  comparable tasks to judges, and that granting them absolute

18  immunity ultimately serves the public's interest, even while

19  "leav[ing] the genuinely wronged prisoner without civil redress

20  against the official whose malicious or dishonest actions

21  deprive the prisoner of liberty."

22     The Ninth Circuit cases that Plaintiffs rely upon to

23  support their argument that the BPT Defendants are not entitled

24  to absolute immunity, Thompson v. Davis, 295 F.3d 890 (9th Cir.

25  2002) and Armstrong v. Davis, 275 F.d3d 849 (9th Cir. 2001), did

26  not address the issue of absolute immunity because, in those

27  cases, the plaintiffs sought only prospective injunctive relief.

28

11

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1  Plaintiffs have cited no authority, and the Court knows of none,

2  holding that BPT members may be liable for damages arising from

3  their decisions to deny or revoke parole.

4       Defendants acknowledge that absolute immunity is not a

5  defense against claims for declaratory or injunctive relief.

6  See Ex parte Young, 209 U.S. 123, 159 (1908); Am. Fire, Theft &

7  Collision Managers v. Gillespie, 932 F.2d 816, 818 (9th Cir.

8  1991).  Plaintiffs seek both declaratory and injunctive relief

9  against the BPT Defendants.  The BPT Defendants' argument that

10 Plaintiffs' request for injunctive relief is moot or otherwise

11 not a cause of action is not persuasive.

12      For the foregoing reasons, the Court grants the BPT

13 Defendants' motion for summary judgment of absolute immunity

14 from Plaintiffs' damages claims.  However, Plaintiffs may pursue

15 their claims for declaratory and injunctive relief against these

16 Defendants.

17      B.   Qualified Immunity

18      The BPT Defendants are also entitled to qualified immunity

19 from Plaintiffs' damages claims.  The defense of qualified

20 immunity protects government officials "from liability for civil

21 damages insofar as their conduct does not violate clearly

22 established statutory or constitutional rights of which a

23 reasonable person would have known."  Harlow v. Fitzgerald, 457

24 U.S. 800, 818 (1982).  The threshold question is whether, taken

25 in the light most favorable to the plaintiff, the facts alleged

26 show that the official's conduct violated a constitutional

27 right.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  The

28                                12

United States District Court

For the Northern District of California

1  plaintiff bears the burden of proving the existence of a clearly

2  established right at the time of the allegedly impermissible

3  conduct.  <u>Maraziti v. First Interstate Bank</u>, 953 F.2d 520, 523

4  (9th Cir. 1992).  If the law is determined to be clearly

5  established, the next inquiry is whether a reasonable official

6  <u>could have</u> believed his conduct was lawful.  <u>Act Up!/Portland v.</u>

7  <u>Bagley</u>, 988 F.2d 868, 871-72 (9th Cir. 1993).

8       Plaintiffs assert that their constitutional rights were

9  violated when the BPT Defendants denied Plaintiffs parole based

10  upon their indeterminate status in Pelican Bay's SHU.  However,

11  the evidence submitted shows that the BPT took several factors

12  into account when it denied Plaintiffs' parole applications.  In

13  particular, the BPT emphasized the violent nature of Plaintiffs'

14  commitment crimes and the risk of danger that the board

15  determined Plaintiffs pose to society.  Thus, even if Plaintiffs

16  are correct in their assertion that California has an

17  unconstitutional "no SHU parole policy," they have submitted no

18  evidence that such a policy has been applied to them personally

19  or that their individual constitutional rights have been

20  violated.

21       The second prong of the qualified immunity analysis,

22  whether the BPT Defendants could have reasonably believed that

23  their actions were legal, also favors the BPT Defendants.  The

24  qualified immunity standard is difficult for Plaintiffs to meet.

25  In <u>Sorrels v. McKee</u>, 290 F.3d 965 (9th Cir. 2002), the plaintiff

26  challenged a prison policy that, pursuant to Washington State

27  law, did not allow the plaintiff to receive a complimentary book

28
                                   13

**United States District Court**
For the Northern District of California

1  that had been sent to him by a publisher.  The Ninth Circuit,

2  after acknowledging that the district court had ruled that the

3  prison's policy was unconstitutional, upheld the district

4  court's finding that qualified immunity nevertheless applied:

5  "To defeat the defendants' claim of qualified immunity, then,

6  [the plaintiff] had to show that the policy was such a far cry

7  from what any reasonable prison official could have believed was

8  legal that the defendants knew or should have known they were

9  breaking the law."  Id. at 971.  Here, the evidence is clear

10 that the BPT Defendants followed, in denying Plaintiffs parole,

11 the parole determination guidelines that are required by State

12 law.  However, unlike in Sorrels, there is no evidence that the

13 BPT Defendants applied an unconstitutional "no SHU parole

14 policy" to Plaintiffs in making the parole determinations.

15 Thus, the BPT Defendants were reasonable in their belief that

16 they acted legally in denying Plaintiffs parole.

17      For the foregoing reasons, the BPT Defendants are entitled

18 to summary judgment of qualified immunity from Plaintiffs'

19 damages claims against them.

20                          CONCLUSION

21      For the foregoing reasons, Defendants' motion to dismiss is

22 GRANTED in part and the BPT Defendants' motion for summary

23 judgment of absolute and qualified immunity from Plaintiffs'

24 damages claims is GRANTED (Docket No. 13).  Defendants' motion

25 to dismiss Ashker's second cause of action, for violation of his

26 First Amendment freedom of speech arising from the prison's

27 policy of not allowing hard cover books in the SHU, is DENIED.

28                              14

1  Plaintiffs' remaining claims are dismissed without prejudice.

2  Plaintiffs' motion for leave to file a brief in excess of

3  twenty-five pages (Docket No. 24) is GRANTED.

4       IT IS SO ORDERED.

5

6  Dated: 6/2/05                          /s/ CLAUDIA WILKEN
                                          CLAUDIA WILKEN
7                                         United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

15